UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| CHRISTINE ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 10-116-DCR |
| | ) | |
| V. | ) | and |
| | ) | |
| STANLEY M. CHESLEY, et al., | ) | Civil Action No. 2: 10-117-DCR |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CANDACE WENGER, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| V. | ) | |
| | ) | |
| STANLEY M. CHESLEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, and Robert A. Steinberg have filed a Joint Motion for Summary Judgment in each of the above-captioned actions. [Civil Action No. 2: 10-116-DCR (Anderson), Record No. 142; Civil Action No. 2: 10-117-DCR (Wenger), Record No. 105] They argue that there is no genuine issue of material fact as to the claims asserted by *pro se* Plaintiffs Christine Anderson and Candace Wenger. Because the Court finds that it lacks subject-matter jurisdiction over the plaintiffs' claims pursuant to the *Rooker-Feldman* doctrine, the instant actions will be dismissed.

I.      BACKGROUND

These cases arise out of a class action filed in state court against the Catholic Diocese of Covington, Kentucky. Anderson and Wenger were members of the class, which consisted of individuals who, as children, had been sexually abused by clergy or other Diocese employees. Anderson joined the suit on her own behalf, while Wenger pursued a claim on behalf of her father's estate. The defendants served as class counsel in the Diocese litigation, along with two other attorneys.

Pursuant to a settlement reached in January 2006, the Diocese and its insurers paid approximately $84 million into various settlement funds.[1] Following the settlement, the Boone Circuit Court approved a procedure for evaluating claims by class members and distributing settlement funds. The terms of the class action settlement, as well as Anderson's and Wenger's awards, were discussed at length in the Court's previous Memorandum Opinion and Order. [*See* Anderson Record No. 81, pp. 3-16; Wenger Record No. 70, pp. 3-16.] For present purposes, a short summary will suffice.

The amount of each class member's award was determined by his or her placement in a settlement matrix. The matrix consisted of four categories, each representing a certain level of severity of abuse and range of possible compensation. Class members' placement in the matrix was determined by two special masters appointed by the Boone Circuit Court. With respect to class members who fell into one of the two highest categories (Category 3 or 4), the special masters also determined whether additional compensation from the Extraordinary Injury Fund

---

1      The amount of the settlement ultimately increased as a result of interest that accrued on investments before payments were made to claimants.

(EIF) was appropriate. EIF awards were based on the extraordinary nature of a class member's injuries, as compared to other class members in those categories. Class members could appeal either award determination to a third special master.

Anderson received a total of $400,000: a $350,000 award under Category 4 of the matrix and a $50,000 EIF award. She appealed only the latter to the special master. Meanwhile, Wenger recovered $200,000 — a Category 3 award — on behalf of her father's estate. She, Anderson, and three other class members, represented by attorney Thomas E. Clay, appealed the Boone Circuit Court's Final Order of Dismissal, as well as the court's denial of their requests for an accounting of settlement funds and a hearing on the issue of how class members were assigned to categories, to the Kentucky Court of Appeals. [Anderson Record No. 142-33, pp. 1-2; Wenger Record No. 105-33, pp. 1-2] Their appeal was later dismissed for failure to join necessary or indispensable parties. [Anderson Record No. 142-33, p. 45; Wenger Record No. 105-33, p. 45] They took no further action in state court to challenge the outcome of the Diocese litigation.

On May 27, 2010, Anderson and Wenger filed virtually identical complaints against the defendants in this Court, alleging breach of fiduciary duty, professional negligence, and fraud. [*See* Anderson, Record No. 2; Wenger, Record No. 2.] Each sought an accounting of all settlement funds, disgorgement of fees earned by the defendants, and a constructive trust on settlement funds under the defendants' control, as well as compensatory and punitive damages. [*See* Anderson, Record No. 2, p. 6; Wenger, Record No. 2, p. 6.] According to the Complaints, the defendants failed to provide Anderson and Wenger with important information regarding the

class action settlement, failed to adequately represent their interests, and misrepresented the amounts they would receive under the settlement. [*See* Anderson, Record No. 2, pp. 4-5; Wenger, Record No. 2, pp. 4-5.]

The defendants filed a Motion to Dismiss in each case, which the Court construed as motions for summary judgment. [Anderson Record No. 50; Wenger Record No. 47] The motions were denied without prejudice because the record had not yet been sufficiently developed. [*See* Anderson Record No. 81; Wenger Record No. 70.] Now, following further discovery, the defendants again seek summary judgment. They argue that Anderson and Wenger have launched an impermissible collateral attack on the class-action settlement approved by the state court. The defendants further contend that the plaintiffs' claims fail on the merits. However, the Court does not reach the merits of the claims because, as will be explained below, it lacks subject-matter jurisdiction.

**II.     ANALYSIS**

In recognition of their *pro se* status, the plaintiffs were given an extended period of time to respond to the defendants' current motions for summary judgment. [*See* Anderson Record No. 149; Wenger Record No. 111.] Nevertheless, Wenger failed to file a response. While such failure is not grounds for automatic dismissal of her claims, the Court is under no obligation to search the record to establish a genuine issue of material fact. *Davis v. Cotting Carriers*, 102 F. App'x 938, 939 (6th Cir. 2004) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)). Rather, the Court "may rely upon the facts presented and designated by" the defendants. *Id.* (citing *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992)).

Accordingly, the Court accepts the factual assertions set forth in the defendants' motion with respect to Wenger's claims.[2]

And while Anderson did file a response, it is not, as the defendants note in their reply, particularly responsive to the summary judgment motion. [*See* Anderson, Record No. 206.] Her brief contains no legal citations or argument and is largely devoted to inflammatory accusations and factual assertions not raised in her complaint — and, for the most part, unsupported by evidence in the record and irrelevant to her claims. [*See* Anderson, Record No. 198] Anderson maintains that although the defendants have "flooded" the Court with documents, "[i]t's what you don't see, and what they are not telling you," that establishes their wrongdoing.[3] [*Id.*, p. 2] Such an approach is unhelpful to her position, since she bears the burden of producing concrete evidence to demonstrate a genuine issue of material fact. *See Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002) (explaining that on a motion for summary judgment, once the moving party has shown that no genuine issue of material fact exists, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial"). Despite the plaintiffs' lack of factual support, however, it is the *Rooker-Feldman* doctrine – not summary judgment – that defeats their claims.

---

2    Wenger's lack of counsel is irrelevant here. Although "[a] number of other circuits have held that a pro se party . . . must have notice of the consequences of failing to respond to a summary judgment motion and fair notice of the requirements of the summary judgment rule before summary judgment may be entered against her[,] . . . [the Sixth] [C]ircuit has not adopted that rule." *Turney v. Catholic Health Initiatives*, 35 F. App'x 166, 168 (6th Cir. 2002) (citing *Williams v. Browman*, 981 F.2d 901, 903-04 (6th Cir. 1992)) (internal citations omitted). Moreover, because her complaint is not verified, the Court may not accept Wenger's allegations as evidence that might establish a genuine issue of material fact. *See id.*

3    Anderson's entire brief is typed in capital letters, with many passages — including the one quoted above — further emphasized by underlining, italics, bold type, or all three. In the interest of readability, the Court will observe conventional typeface rules when quoting the brief herein.

The Court previously declined to dismiss these cases pursuant to the *Rooker-Feldman* doctrine because the defendants had not provided evidence from the state-court action to support such a dismissal. [*See* Anderson, Record No. 81, pp. 29-30; Wenger, Record No. 70, pp. 29-30.] Now, however, the record contains a number of documents from the Diocese litigation in Boone Circuit Court, including the Order Approving Settlement entered by that court on January 31, 2006. [*See* Anderson, Record No. 142-6, pp. 4-18; Wenger, Record No. 105-6, pp. 4-18.] The Order contained a detailed evaluation of the fairness and adequacy of the settlement, ultimately concluding that the settlement was "fair, reasonable and adequate." [Anderson, Record No. 142-6, p. 17; Wenger, Record No. 105-6, p. 17] Also in the record is the state court's Final Order of Dismissal, which was entered May 28, 2009. [Anderson, Record No. 142-37; Wenger, Record No. 105-37]

As stated previously, Anderson and Wenger allege that the defendants failed to provide them with important information regarding the settlement approved by the Boone Circuit Court, failed to adequately pursue their interests in the Diocese litigation, and falsely represented the amounts they would receive in the settlement. [*See* Anderson, Record No. 2, pp. 4-5; Wenger, Record No. 2, pp. 4-5] They do not identify any specific injury or injuries that they suffered as a result of the defendants' alleged actions. However, construing their *pro se* complaints liberally as the Court must, it is clear that the injury is (what they perceive to be) an undesirable outcome from the settlement — *i.e.*, as a result of their attorneys' alleged wrongdoing, the plaintiffs received smaller awards in the settlement than they believe they were entitled to receive.

Essentially, then, Anderson and Wenger seek to attack the settlement reached in the underlying class action. In so doing, they necessarily also attack the state court's finding that the settlement was proper. The Court lacks subject-matter jurisdiction to hear such claims, however, under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine precludes "'lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments.'" *Marks v. Tennessee*, 554 F.3d 619, 622 (6th Cir. 2009) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006)). It applies where a plaintiff in federal court alleges injury arising out of a state-court decision. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). The determining factor for *Rooker-Feldman* purposes "is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the court from asserting jurisdiction." *Id.*

The Seventh Circuit has applied the source-of-injury test when examining claims similar to those asserted by Anderson and Wenger. *See Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996). In *Kamilewicz*, the plaintiffs – members of a class action litigated and settled in an Alabama circuit court – filed suit against class counsel in federal court, alleging, among other claims, fraud, legal malpractice, and breach of fiduciary duty.[4] *Id.* at 509. Under the terms of the class-action settlement, which the Alabama state court had "specifically found . . . to be fair," *id.* at 510, the plaintiffs received awards that were significantly lower than the attorney fees they were obligated to pay. *Id.* at 508-09. Although the Seventh Circuit

---

4    The *Kamilewicz* plaintiffs also named the class-action defendants as defendants in their federal action. *See* 92 F.3d at 508-09.

acknowledged that the Alabama court's decision "seem[ed] questionable on the surface," *id.* at 511, it found the plaintiffs' claims to be barred by *Rooker-Feldman* because their "injuries [were] a result of the state court judgment." *Id.* A federal court considering those claims, the *Kamilewicz* panel explained, "would run directly into the state court finding [—] entered after a two-day fairness hearing — that the fees were reasonable." *Id.* In other words, "but for the state court determinations, the federal plaintiffs would have had no complaint." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 998 (7th Cir. 2000) (citing, *inter alia*, *Kamilewicz*, 92 F.3d at 511).

In an analogous case from this circuit, the district court enjoined a class member from pursuing claims of fraud, misrepresentation, and breach of fiduciary duty in a state-court lawsuit against the attorney who had represented her in a federal class action. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, No. 1:01-CV-9000, 2005 U.S. Dist. LEXIS 23912 (N.D. Ohio Oct. 18, 2005), *aff'd sub nom. Kuhn v. Sulzer Orthopedics, Inc.*, 498 F.3d 365 (6th Cir. 2007). The court noted that the "common theme underlying th[o]se claims" was that the attorney had given the plaintiff "incorrect or incomplete information about what the Settlement Agreement said, how it worked, whether it was fair, and what might happen if she opted out."[5] *Id.* at *37. Prosecution of such claims in a state-court proceeding, the court held, "would . . . be tantamount to an appeal of th[e] Court's [own] earlier Orders," particularly its approval of the settlement. *Id.* at *43; *see id.* at *39-42.

---

5    The court did allow the plaintiff to pursue a single claim of malpractice. *In re Sulzer*, 2005 U.S. Dist. LEXIS 23912, at *34. However, that claim was based solely on the attorney's failure to timely file for EIF benefits, and the parties did not dispute that the plaintiff would have received an additional $160,000 EIF award had her attorney met the filing deadline. *Id.* at *21 n.6.

-8-

Although *In re Sulzer* did not implicate the *Rooker-Feldman* doctrine because it involved a plaintiff's attempt to challenge a federal judgment in state court and not vice versa, the court's reasoning is equally applicable here: approval of a class-action settlement entails a finding that class members received satisfactory representation. *See id.* at *39-43; *see also Kamilewicz*, 92 F.3d at 511; *Koehler v. Brody*, 483 F.3d 590 (8th Cir. 2007) ("Implicit within the court's approval [of the class-action settlement] were findings that the case had not settled for an amount that was too low, and that class counsel 'fairly and adequately protected the interests of the class.'" (citation omitted) (quoting *Thomas v. Powell*, 247 F.3d 260, 264 (D.C. Cir. 2001))); *Laskey v. UAW*, 638 F.2d 954, 957 (6th Cir. 1981) ("[A] finding that the class was adequately represented is necessary for finding the settlement was fair and reasonable, which in turn was essential to approving the settlement . . . ."). Thus, a separate action challenging class counsel's performance amounts to a forbidden appeal of the approving court's decision as to the fairness, adequacy, and reasonableness of the settlement.

Like the plaintiffs in the cases cited above, Anderson and Wenger seek to belatedly appeal the class-action settlement. Although they allege legal malpractice and fraud, the "common theme underlying" their claims is that the defendants provided them with "incorrect or incomplete information" concerning the settlement. *In re Sulzer*, 2005 U.S. Dist. LEXIS 23912, at *37; *see also DelFrate v. Shanner*, No. 99-2278, 2000 U.S. App. LEXIS 21517, at *6 (6th Cir. Aug. 17, 2000) (affirming dismissal on *Rooker-Feldman* grounds where "[t]he plaintiffs clearly sought to relitigate and collaterally attack the state court's findings and judgment regarding the probate settlement and the distribution of estate assets[,] . . . even though their

intent to do so was thinly veiled by allegations of legal malpractice challenging [the attorney's] handling of their state court actions"). Simply put, had they gotten what they wanted out of the settlement, they would have no complaint now.[6] *See Remer*, 205 F.3d at 998. But the Boone Circuit Court has already concluded — following a fairness hearing and extensive analysis — that the settlement in the Diocese litigation was fair, reasonable, and adequate. [*See* Anderson, Record No. 142-6, pp. 4-18; Wenger, Record No. 105-6, pp. 4-18.] This Court could not resolve the plaintiffs' claims in their favor without reviewing and, in effect, overturning that finding. *See Kamilewicz*, 92 F.3d at 510. Such review is forbidden under *Rooker-Feldman*.

### III. CONCLUSION

The Court lacks subject-matter jurisdiction over the plaintiffs' claims pursuant to the *Rooker-Feldman* doctrine. Accordingly, it is hereby

**ORDERED** that these actions are **DISMISSED**, without prejudice, and shall be stricken from the Court's docket. The defendants' Joint Motions for Summary Judgment [Civil Action No. 2: 10-116-DCR, Record No. 142; Civil Action No. 2: 10-117-DCR, Record No. 105] are **DENIED** as moot.

---

6   Interestingly, the present lawsuits were filed on May 27, 2010 — the last day of the one-year period following the Boone Circuit Court's entry of its Final Order of Dismissal in the Diocese litigation. [*See* Anderson, Record Nos. 2, 142-37; Wenger, Record Nos. 2, 105-37] As the Court noted in its previous Memorandum Opinion and Order, to avoid dismissal under the one-year statute of limitations for legal malpractice actions, "the plaintiffs must establish that: (i) the occurrence giving rise to the claims did not occur prior to May 28, 2009, or (ii) [they] did not discover, and could not reasonably have discovered, that they had claims to assert prior to that date." [Anderson Record No. 81, p. 23; Wenger Record No. 70, p. 23] The timing of the Complaints further indicates that the plaintiffs view these actions as vehicles for challenging the state court's decision.

This 1st day of August, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge